UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRIAN E. SPRINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:13cv185 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act 42 U.S.C. §423(d). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since April 16, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: right shoulder biceps tendonitis and rotator cuff tendonitis, status post arthroscopy; history of left shoulder arthroscopy; hypertension; diabetes mellitus; and, obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and as follows: lift and/or carry 20 pounds occasionally and ten pounds frequently; stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday; push and pull levers and controls only occasionally with the right upper extremity; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and/or crawl; frequent reaching with the right upper extremity, but only occasional overhead reaching bilaterally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 4, 1959, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 16, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-23.)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 30, 2013. On March 31, 2014, the defendant filed a memorandum in support of the Commissioner's decision, to which the plaintiff replied on April 22, 2014. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the Commissioner's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff has an extensive medical history. However, his argument on this appeal centers

on whether the ALJ erred by failing to incorporate the limitations related to his multiple bilateral foot impairments into the RFC finding and in failing to consider all impairments in combination.

Plaintiff lists the following medical evidence in support of his argument. In February 2007, plaintiff's primary care physician, Dr. Berry Miller, investigated pain in plaintiff's left foot and ordered an x-ray, which showed a plantar calcaneal spur (a bony growth on the large bone of the heel). In June 2008, plaintiff accidentally hit the top of his left foot with an air gun at work. In August 2008, plaintiff experienced sharp pain over his outer left ankle. The x- rays showed a large plantar calcaneal spur and mild enthesopathic change at the insertion site of the Achilles tendon. Dr. Liechty recommended plaintiff consider wearing an ankle brace and exercise caution getting in and out of vehicles. By October 2009, plaintiff exhibited heel pain in both feet.

On October 10, 2011, Dr. Miller opined that plaintiff probably needed surgery to address right plantar fasciitis and referred him to Christopher Bussema, a podiatrist. Dr. Miller documented that plaintiff's right heel hurt so badly that he "cannot be up on it more than 5-7 minutes." On October 12, 2011, Podiatrist Bussema touched the sole of each of plaintiff's feet and recorded "significant" pain to palpation at the plantar heel arch. X-rays taken on October 13, 2011 showed a moderate to large calcaneal bony spur at the plantar insertion site on the right foot and the left foot. X-rays also revealed mild degenerative changes in the first metatarsal-phalangeal joint of the right foot. On October 28, 2011, Dr. Bussema diagnosed bilateral plantar fasciitis, cavus deformity, equinus deformity, hallux valgus, and calcaneal spur. Taping, ultrasound, steroid injections, therapy, and other attempts to alleviate plaintiff's pain provided temporary relief, but then the pain returned: a process that repeated from October 2011 through December 2011.

On December 28, 2011, Dr. Bussema cut into the bottom of plaintiff's right heel. He released approximately two thirds of the plantar fascia. Dr. Bussema re-dispensed Vicodin, changed plaintiff's dressing, advised him to elevate, to ice, and to limit weight bearing, among other things. On February 1, 2012, plaintiff reported that his right foot was still stiff and that he felt tightness when he first started walking on it but that the tightness let up after thirty seconds. Dr. Bussema also diagnosed decreased range of motion in the first metatarsal-phalangeal joint in plaintiff's left foot. Dr. Bussema also observed a bunion, and a lateral deviation of the hallux in plaintiff's left foot. With plaintiff's knee extended, he experienced decreased range of motion with respect to both feet in dorsiflexion (flexing the foot/toes up towards the knee). In both feet, Dr. Bussema diagnosed equinus deformity (a shortened Achilles tendon that restricts ankle dorsiflexion.) In February 2012, Dr. Bussema asked plaintiff to begin certain stretching exercises until the next visit, where he planned to fit and dispense new orthotics.

On March 6, 2012, at the hearing before the ALJ, plaintiff testified that his feet hurt when he tries to walk and that, although the right foot was feeling better after surgery, he still could not put any weight on the foot. He still took Vicodin and Tylenol. He also believed surgery on the left foot was "coming down the road."

Plaintiff argues that the ALJ minimized the limitations of his bilateral foot impairments by not accounting for his pain while standing or walking generally, nor by specifically accounting for the fact that he may have to stand upon hard and/or uneven surfaces in the light exertional occupational base. The plaintiff further argues that the ALJ did not make the connection that plaintiff's morbid obesity (a serious health problem in and of itself) would intensify the bilateral foot impairment problems associated with standing and walking. The ALJ must build an accurate

6

and logical bridge between the evidence and the ALJ's RFC conclusions. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Plaintiff believes that the ALJ assumed that surgery cures plantar fasciitis, and also assumed that if plantar fasciitis pain is not bad enough for surgery then such an impairment will not affect work related activities. Plaintiff argues that the ALJ ignored the long-standing nature of the bilateral foot impairments, including their confirmation from doctors' notes in 2003 and x-rays from 2007, 2008 and 2009, all of which showed calcaneal spur problems. Plaintiff notes that the ALJ never mentions that Dr. Bussema diagnosed plaintiff with *chronic* plantar fasciitis, not merely a brief one-time condition. An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe. 20 C.F.R. § 404.1545(a); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). Thus, even if plaintiff's bilateral foot problems were not severe, the ALJ would still need to accommodate any limitations from them into the RFC.

Plaintiff further argues that the RFC also fails to account for the weight plaintiff places on his feet. The ALJ concedes obesity as a "severe" impairment. Yet the core condition of plantar fasciitis is characterized by pain at the bottom of the heel with weight bearing. Further, such pain at the bottom of the heel worsens with weight bearing, particularly when pushing off the heel and over the course of the day. Moreover, if these symptoms have alleviated somewhat for plaintiff in his non-working state, this exact foot disorder may occur in people whose occupations involve standing or walking on hard surfaces for prolonged periods. However, the RFC fails to account for the increased strain of walking or standing on hard or uneven surfaces.

Further, the ALJ's analysis of the bilateral foot impairment seems limited to those that the

7

late-2011 surgery supposedly fixed. The ALJ acknowledged that on October 17, 2011, plaintiff walked with an "antalgic" gait so as to minimize pain. Dr. Bussema diagnosed multiple foot ailments which could have contributed to the gait issues, only a few of which he repaired. In late 2011, Dr. Bussema diagnosed cavus deformity in both of plaintiff's feet. He also diagnosed equinus deformity in both feet, plus plantar fasciitis in both feet. In addition, Dr. Bussema diagnosed decreased range of motion in plaintiff's first left-foot metatarsal-phalangeal joint, as well as a bunion. Thus, argues plaintiff, even after the right foot surgery, other bilateral foot impairment problems remained that should have impacted the RFC.

An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider "all relevant evidence." See *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir.2000); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir.1996). It is not enough for the ALJ to address mere portions of a doctor's report. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir.2000). Plaintiff argues that the ALJ attempted to minimize Dr. Bussema's diagnoses and treatment regimens by selectively pulling out narrow pieces of Dr. Bussema's reports, rather than considering them in the context of a long and physically demanding work history and a documented multi-year history of bilateral foot injuries, impairments, pain, and treatment. The ALJ cites plaintiff denying pain at his January 4, 2012 visit, but plaintiff points out that at that time he was still taking post-surgery Vicodin and was medically forbidden from putting weight on his right foot. Plaintiff acknowledges that in February 2012, he said he had "tightness when he first starts walking on it but after 30 seconds it seems to let up," but at the hearing in March 2012, he said he continued to experience pain in both feet and could not bear weight on his right foot. The ALJ says that these two things are inconsistent, but does not account for the fact that at

the February 2012 appointment, Dr. Bussema recorded "less discomfort," not "no discomfort" and the ALJ does not account for the fact that, being so early in the recovery process, that plaintiff's status may have ebbed and flowed or have even deteriorated. Moreover, Dr. Bussema did not imply that plaintiff had been cured because, as of plaintiff's last visit, the medical assessment still remained "cavus deformity" and "plantar fasciitis."

This court finds that although the ALJ did discuss plaintiff's bilateral foot impairments, the ALJ failed to build an accurate and logical bridge between the evidence and her RFC conclusion. The ALJ did not fully consider the evidence regarding plaintiff's foot problems, and also failed to take into account the combination effect of plaintiff's obesity and bilateral foot problems. Accordingly, the court will remand for further proceedings.

The plaintiff has also argued that the ALJ's credibility determination is improper, flawed, and incomplete. Plaintiff claims that the credibility determination is improper because it uses the boilerplate disapproved in *Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011), and the prohibition against "picking and choosing" only the evidence that supports an ALJ's position. See *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir.1984); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir.1984); *Green v. Shalala*, 852 F.Supp. 558, 568 (N.D.Tex. 394*394 1994); *Armstrong v. Sullivan*, 814 F.Supp. 1364, 1373 (W.D.Tex.1993); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir.2000). Plaintiff further claims that the credibility determination is flawed because it fails to build an accurate and logical bridge between the evidence and the result. See *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996). Plaintiff further claims that the credibility determination is incomplete because it ignores the impact of evidence (namely plaintiff's long and consistent work history and his multiple attempts to return to work) on the credibility determination. *See*

*Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir.2003).

In *Martinez*, the Seventh Circuit stated:

> Opinions of administrative law judges denying benefits routinely state (with some variations in wording) that although "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible," yet fail to indicate which statements are not credible and what exactly "not entirely" is meant to signify.

630 F.3d 693, 697 (7th Cir. 2011)

Plaintiff argues that the ALJ used a variant of this disapproved boilerplate and compounded the error by providing inadequate explanation as to how credible or non-credible Plaintiff's specific statements were. Plaintiff maintains that specific statements that are deemed non-credible must be identified and then the ALJ must demonstrate how and why said specific statements are non-credible. Plaintiff claims that the ALJ cherry-picked two key statements from the voluminous medical record to attack his credibility. The statement which contained the answer "feeling great" in response to a general inquiry by Dr. Miller is the first. Dr. Miller directed the inquiry toward plaintiff's recent difficulties with diabetes medication. Plaintiff contends that his answer is hardly a statement that he is able to work, nor is it inconsistent with other statements he may have made that would have described his status at different points in time. This is especially so when subsequent diabetes testing clearly indicated that things were not under control. Plaintiff argues that the ALJ's view here suggests that a momentary improvement in subjective feeling overrules objective diabetes testing and a medical history of fluctuating blood glucose levels. Plaintiff points out that such a view is neither accurate, nor logical because diabetics experience times when they feel better than others. Thus, plaintiff's statement in

isolation tells us nothing about his credibility.

The ALJ also zeroed in on a February 12, 2011 statement to Dr. Bussema, made a mere six weeks after right foot surgery. "Patient states that there is less discomfort, and very pleased with the outcome, but still stiff… and he has some tightness when he first starts walking on it but after 30 seconds it seems to let up." This is hardly a statement that endorses that he can stand and walk 6 out of 8 hours a day, five days a week. This was the statement of someone who was just beginning to walk again. There was no indication how far he could walk or how long he could stand and Dr. Bussema did not seek such answers. When plaintiff made this statement, Dr. Bussema had not yet instructed him to start exercises nor had he fitted him with orthotics. The ALJ's view suggests that all post-surgery paths follow a steady road to recovery without any setbacks and that testimony about such setbacks is not credible. This view is neither accurate, nor logical.

Plaintiff also points out that the ALJ also failed to discuss plaintiff's extensive work history and how his work history (in conjunction with his multiple attempts to return to work after suffering significant health challenges) enhance his credibility. See *Caviness v. Apfel*, 4 F. Supp. 2d. 813 (SD IN 1998). The ALJ must articulate, at least at some minimum level, his analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to "be assured that the ALJ considered the important evidence." *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir.1995), quoting *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir.1995). This does not mean that the ALJ must provide a written evaluation of every piece of testimony and every submitted medical record. *Diaz*, 55 F.3d at 308. On the other hand, an ALJ's failure to discuss an entire line of evidence does not meet the minimal level of articulation required. *Green*, 51 F.3d. 96, 101.

11

The ignored evidence was critical to the credibility determination and yet it was not analyzed or balanced. Suffering spinal conditions, shoulder conditions, hand conditions, and foot conditions (all compounded by obesity, diabetes mellitus, hyperlipidemia, asthma, hypertension and a long fight with horrible infections, among other things), plaintiff forced himself to somehow keep working at a job that no doubt further worsened his problems. Plaintiff argues that it would violate the policy goals of disability insurance to punish this gusto for work, this drive to spring back against the odds, this passion for trying to stay in the game despite injuries. The ALJ relies upon the faulty premise that if impairments and/or pain were present for years and years and it did not keep Plaintiff from working then, it would not keep him from working now. This type of reasoning ignores the fact that as person gets older degeneration and disease often worsen over time, and that after surgery things are never quite as good as new, and multiple surgeries often leave the body weaker. In the present case we have a plaintiff that kept fighting to stay in the work place. Plaintiff contends that when a person like himself says he cannot go on, there is no logical reason to disbelieve him.

"An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Furthermore, when reviewing the ALJ's credibility determination, the reviewing court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, in the present case it is clear that the ALJ took a few stray statements and facts out of context and used them to discredit key medical findings in the record. As this case is being remanded anyway, the court further remands for a more accurate credibility determination.

Plaintiff in this case was a veritable workhorse while he was able. He was not a complainer, he was not a quitter, he was not a malingerer. To now use his positive, "can do" attitude against him during his pursuit for disability benefits, benefits for which he has contributed a portion of his paycheck for many years, will not be condoned. A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability. *Porter v.* Chater, 921 F. Supp 89, 90 (D. Conn. 1996) citing *Rivera v. Schweiker* 717 F.2d. 719,725 (2d. Cir. 1983). See also *Singletary v. Secretary of Health, Education and Welfare*, 623 F.2d 217, 219 (2d Cir.1980). A long and continuous past work record with no evidence of malingering is a factor supporting credibility assertions of disabling impairments. *Allen v. Califano*, 613 F.2d. 139, 147 (6th Cir. 1980).

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REMANDED.

Entered: July 2, 2014.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court